**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PHIL DEGGINGER, | ) | |
| Plaintiff, | ) | CASE NO. 2:11-cv-06600-CDJ |
| v. | ) | |
| | ) | |
| JOHN WILEY & SONS, INC., | ) | |
| Defendant. | ) | |
| | ) | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

## I.      Introduction

This is an action for copyright infringement resulting from Defendant John Wiley & Sons, Inc.'s ("Wiley") use of Plaintiff Phil Degginger's ("Plaintiff") copyrighted photographs in excess of the limited licenses it was granted by Plaintiff Phil Degginger ("Degginger") or his licensing agents.  Wiley now claims that its infringements have been excused by after-the-fact licenses it has obtained from two of Degginger's agents, Photoshot (the successor to Bruce Coleman, Inc.) and Photo Researchers, Inc.[1]  But a retroactive license cannot extinguish Degginger's accrued claims for copyright infringement.  And, even if it could, Degginger's agencies did not have authority to release Degginger's claims-in-suit.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

Degginger is a well-known professional photographer.  He and his father, professional photographer Ed Degginger (now deceased), for many years licensed their copyrighted photographs to Wiley directly (through their agency Color-Pic, Inc.) and through non-party stock photography agencies, including Bruce Coleman, Inc. and Photo Researchers, Inc., for use in its

---

[1] Wiley's Motion for Partial Summary Judgment (Doc. 77).

textbooks and related products. Per Wiley's request, the licenses were circumscribed for its limited use. Wiley, however, thereafter exceeded the uses purchased. Degginger now knows that Wiley's infringements began more than 20 years ago, and some continue to this day.[2] As a result, Degginger filed his complaint for copyright infringement on October 21, 2011.[3]

Although Degginger, in his original complaint, identified some of his photographs in particular Wiley publications that he believed Wiley had infringed, it was clear from the start that Degginger was suing Wiley for all of its infringements of his photographs, not just those specified in the complaint. Degginger pleaded:

> 14.     Upon information and belief, Wiley used the Photographs without any permission in additional publications. Because Wiley alone knows these unauthorized uses, Plaintiffs cannot further identify them without discovery. Upon information and belief, Wiley has developed a list of its wholly unlicensed uses and Plaintiffs' Photographs are among those Wiley has so identified.
> . . .
>
> 18.     Wiley's practice of infringing copyrights extends beyond the publications in suit.   This practice extended to thousands of visual art licenses in hundreds of its other publications . . .
>
> 21.     Wiley alone knows the full extent to which it has infringed Plaintiffs' copyrights.[4]

Degginger served his first discovery requests on Wiley in January 2012. Wiley refused to respond to any of Degginger's interrogatories, including one which inquired about all of Wiley's publications in which Degginger's photographs had been used. On July 30, 2012, Degginger filed a motion to compel, in part, requesting the Court order Wiley to respond to (1) his interrogatory regarding its uses of his photographs, and (2) document requests that would

---

[2] Second Declaration of Autumn Witt Boyd ("Boyd Decl."), submitted herewith, ¶¶ 3, 15.
[3] Doc. 1.
[4] Doc. 1 ¶¶ 14, 18, 21.

permit him "to determine the extent of Wiley's infringements."[5]  At this time, Degginger again made clear he was suing Wiley for *all* of its infringements, not only those enumerated in his original complaint.

After a hearing on January 3, 2013, Magistrate Judge Lynne A. Sitarski granted Degginger's motion to compel on February 26, 2013, requiring Wiley to ". . . provide Plaintiff with a list of all publications as to which they paid a licensee of Plaintiff's photographs, as identified by Plaintiff."[6]  The Court effectively overruled Wiley's objection that Degginger's discovery requests "seek[ ] disclosure of documents relating to photographs and publications not in issue in this litigation"[7] when it granted the motion to compel documents relating to Wiley's uses of Degginger's photographs obtained from third-party agencies.

Degginger provided Wiley with a list of his licensing agencies on March 7, 2013.[8]  Wiley provided a list of third-party licenses on March 27, 2013, and, only after further request, produced the actual licenses issued by Degginger's agencies on April 22, 2013.[9]

But Wiley had been hard at work trying to extinguish Degginger's accrued claims before it ever provided these licenses.  On March 15, 2013, Wiley contacted Degginger's photo agency Photoshot, requesting "I would like to talk with you about a new preferred vendor agreement between Photoshot and Wiley, as well as extending the licensing (reuse) of several Bruce Coleman images."[10]  Later that same day, Wiley sent a letter to Photoshot asking to "amicably resolve past inadvertent discrepancies between the photo permissions requested in Wiley's past

[5] Doc. 27 at 3-5, 7.
[6] Doc. 49, p. 2.
[7] Doc. 31 at 8-9.
[8] Boyd Decl. Exhibit A.
[9] Boyd Decl. Exhibits B, C.
[10] Boyd Decl. Exhibit D (WDegginger 526-529).

purchase orders and the actual usage of those by Wiley."[11] Photoshot signed a non-disclosure agreement on April 28, 2013,[12] and on May 8, 2013 signed an agreement whereby Wiley's payment of reuse fees purported to "retroactively cover all issues and will cover Wiley's continued use of the photographs in the Product Family Edition and its Derivative and Ancillary Works, for the life of the edition in all media, with no print run restrictions, for distribution throughout the World, in all languages."[13]

Degginger never gave Wiley any indication that his agencies were authorized to settle the claims-in-suit for copyright infringement.[14] He had no idea that Wiley was contacting his agencies at this time for retroactive "extensions."[15] Wiley attempts to paint itself as taking positive "steps to address instances where its actual use of an image exceeded the uses estimated during its initial transaction with the image's owner or his agent . . ."[16] But the reality is Wiley was doing everything it could conceive to pull the rug out from under Degginger's lawsuit.

By the time Degginger reviewed the Court-ordered invoices, examined Wiley's textbooks to determine which photographs Wiley used, and registered those photographs so that he could move to amend his Complaint on June 28, 2013,[17] unknown to Degginger, Wiley had already obtained most of the "extensions" from Photoshot.[18] After Degginger moved to amend, Wiley

---

[11] Boyd Decl. Exhibit E (WDegginger 534-538). Because Wiley has designated these documents "Confidential" under the Protective Order in this case (Doc. 24), Degginger is lodging Exhibit E under seal, pending a motion to seal by Wiley. Degginger does not concede Wiley's designation is proper by this lodging.

[12] *Id.* (WDegginger 548).

[13] Exhibit 1 to Doc. 77, Declaration of Mary Ann Price ("Price Declaration").

[14] Second Declaration of Phil Degginger, submitted herewith ("Degginger Decl.") ¶ 13.

[15] *Id.* ¶ 8.

[16] Doc. 77-1 at 2.

[17] *See* Doc. 57, Motion to Amend, outlining background of motion to amend and the research necessary for Degginger to add claims regarding third-party-licensed photographs to the complaint. Degginger filed the motion to amend on June 28, 2013.

[18] Exhibit 1 to Price Decl. (WDegginger 0000460-468); Degginger Decl. ¶ 8.

obtained additional "extensions" from Photoshot, on July 19, 2013.[19]  Several of the photographs Degginger's agencies licensed to Wiley were included in the very same textbooks that were identified in Degginger's original complaint.[20]  Yet Wiley never alerted Photoshot that Wiley's uses of Degginger's photographs in textbooks were *already at issue* in pending litigation in federal court, or told Degginger, at that time, it was trying to license around him.[21]

Apparently believing it had effectively stopped Degginger's new claims before they could begin, Wiley on July 26, 2013 filed a notice that it did not oppose Degginger's motion to amend that identified the photographs licensed by Degginger's agencies.[22]  The Court granted Degginger permission to amend his complaint on August 13, 2013.[23]  It was not until *after* this amendment that Wiley produced documents in September 2013 alerting Degginger, for the first time, that it was attempting to settle his claims behind his back.[24]

Finally, nearly six months after this amendment, on January 15, 2014, Wiley obtained an "extension" from Degginger's licensing agency Photo Researchers, Inc. for use of one of Degginger's photographs at issue in the First Amended Complaint.[25]  Wiley has not produced any correspondence in which it alerted Photo Researchers, Inc. that Degginger had sued Wiley for this infringement in his First Amended Complaint.[26]

### III.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the Court may grant summary

---

[19] Exhibit E to Boyd Decl. (WDegginger 0000617);[19] Exhibit 1 to Price Decl. (WDegginger 0000618).
[20] *See, e.g.,* Doc. 64-1, Exhibit A to First Amended Complaint, lines 20, 21 (same textbook); 32, 33 (*id.*).
[21] Boyd Decl.  ¶ 9; Degginger Decl. ¶ 8.
[22] Doc. 61.  Wiley initially refused to consent to the amendment, probably because it did not yet have all of Photoshot's "extensions" in hand.
[23] Doc. 63.
[24] Boyd Decl.  ¶ 10.
[25] *See* Doc. 64-1, Exhibit A to First Amended Complaint, line 18; Exhibit 8 to Price Decl. (WDegginger 859-870)
[26] Boyd Decl.  ¶ 11; *see* Doc. 64-1, Exhibit A to First Amended Complaint line 18.

judgment as to a part of a claim "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party must support a summary judgment motion by citing to particular parts of materials in the record, including depositions, documents, and/or declarations, showing the absence of a genuine dispute.[27] After the moving party meets his burden, the burden shifts to the party opposing summary judgment, which "must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]."[28] The court must draw all reasonable inferences in favor of the non-moving party.[29]

## IV. LEGAL ANALYSIS

Wiley argues that Degginger's claims for copyright infringement must fail because it allegedly obtained unlimited, retroactive permission from his agencies to use certain photographs, after Degginger filed this case. This argument fails for several reasons. First, a retroactive license cannot erase an accrued claim for copyright infringement. And, even if it could, Degginger's agencies did not have authority to extinguish the claims that were pending in this lawsuit before Wiley obtained the retroactive license "extensions." Further, Wiley knew Photoshot had no authority – apparent or otherwise – to grant retroactive licenses for the very copyright infringement claims its principal Degginger was suing Wiley on.

It is undisputed that Degginger owns the copyrights to the photographs at issue in Wiley's motion.[30] The Copyright Act grants Degginger, as the copyright owner, a number of exclusive rights to exploit his copyrighted works in various ways, including by reproduction and

---

[27] Fed. R. Civ. P. 56(c)(1).
[28] *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal quotation marks omitted).
[29] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).
[30] *See* Doc. 78-10, First Declaration of Phil Degginger, ¶¶ 4-6.

distribution.[31]  In order to legally use Degginger's photographs, Wiley must obtain permission (typically called a "license" in the industry) either from Degginger himself, or an *authorized* agent.  Degginger may sue those who exploit his photographs without permission for copyright infringement.[32]

"To establish a claim of copyright infringement, a plaintiff must establish:  (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work."[33] Where, as here, the works in question were licensed to the defendant, the plaintiff must show that the defendant used the works in a manner that exceeded the scope of the licenses.[34]  "[I]f the licensee acts outside the scope of the license, the licensor may sue for copyright infringement."[35]

Degginger's copyright infringement claims against Wiley accrued when "events satisfying all the elements of a cause of action ha[d] taken place,"[36] *i.e.*, when Wiley infringed by making uses of his photographs beyond license limits.  Here, the earliest infringements took place beginning in 1989 and the last infringements began no later than 2011.[37]  Degginger may

---

[31] *See* 17 U.S.C. § 106, enumerating exclusive rights held by a copyright owner.

[32] 17 U.S.C. § 501 *et seq.*

[33] *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005).  *See also Feist Publications, Inc., v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991); *Nelson-Salabes, Inc., v. Morningside Development, LLC*, 284 F.3d 505, 513 (4th Cir. 2002); *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996); *Beholder Productions, Inc. v. Catona*, 629 F.Supp.2d 490, 493 (E.D. Pa. 2009) (Brody, J.); *see also* 17 U.S.C. § 106(1) (copyright owner has the exclusive right to copy and to authorize copying of the work); 17 U.S.C. § 501(a) ("anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 . . . is an infringer of the copyright . . .").

[34] *MacLean Associates, Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 779 (3d Cir. 1991); *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 864 F.Supp.2d 316, 325 (E.D. Pa. 2012) (Gardner, J.); *Greenfield v. Twin Vision Graphics, Inc.*, 268 F.Supp.2d 358, 372 (D. N.J. 2003); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087-1088 (9th Cir. 1989); David Nimmer, 3 Nimmer on Copyright, § 10.15[A][2] (2012).

[35] *MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010) *see also LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006) ("when a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement") (internal quotation marks omitted).

[36] *William A. Graham, Co. v. Haughey*, 646 F.3d 138, 147 (3d Cir. 2011).

[37] Boyd Decl. ¶ 3.

transfer his interest in prosecuting accrued causes of action for infringement to a third party, but he did not do so here.[38] Here, Wiley admittedly exceeded the scope of its original licenses, then belatedly attempted to obtain retroactive permission. Wiley only took this step *after* its infringements came to light because Degginger and other copyright holders sued Wiley.

### A. Wiley's alleged retroactive licenses cannot extinguish Degginger's accrued claims.

Wiley inaccurately argues that Degginger's "agencies did not 'settle' Degginger's claims in this or any other matter, but rather merely extended the license terms governing Wiley's use of the Images."[39] This is simply not true. Wiley clearly hoped to invalidate Degginger's claims by obtaining the retroactive license "extensions."

But Wiley failed in this attempt. "[A] copyright licensee can make himself a 'stranger' to the licensor by using the copyrighted material in a manner that exceeds either the duration or the scope of the license."[40] Before Wiley obtained its "extensions," it was already a "stranger" to the licensor by virtue of its uses beyond license limits. And it is unquestioned that Wiley's use beyond those limits constitutes copyright infringement.[41] Wiley had *no license* to use

---

[38] *See, e.g., ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 997 (2d Cir. 1983).

[39] Doc. 77-1 at 7.

[40] *Marshal v. New Kids On The Block P'ship*, 780 F. Supp. 1005, 1009 (S.D.N.Y. 1991); *see also* David Nimmer, 3 Nimmer on Copyright, § 1015[A] (2012).

[41] *See MacLean Associates, Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 779 (3d Cir. 1991) ("Since a nonexclusive license does not transfer ownership of the copyright from the licensor to the licensee, the licensor can still bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license.") (citing *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d at 1156 ["A copyright holder may grant a limited license for use of copyrighted material, and if the scope of the license is exceeded, the owner of the copyright may sue for infringement."]); *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 864 F.Supp.2d 316, 325 (E.D. Pa. 2012) (Gardner, J.) ("When a licensee exceeds the scope of a license granted by the copyright holder, the licensee is liable for infringement."); *Greenfield v. Twin Vision Graphics, Inc.*, 268 F.Supp.2d 358, 372 (D. N.J. 2003); *see also In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 534-535 (4th Cir. 2003); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087-1088 (9th Cir. 1989) ("A licensee infringes the owner's copyright if its use exceeds the scope of its license. The critical question is not the existence but the scope of the license."); David Nimmer, 3 Nimmer on Copyright § 10.15[A] (2012) ("[W]hen a license is limited in scope, (*cont'd*)

Degginger's photographs at this point. Degginger's claims for copyright infringement had already accrued. Therefore, there was no license for Wiley to retroactively "extend." Wiley could not undo these facts and merely "extend the license terms," without attempting to extinguish Degginger's accrued (and actively being litigated) claims.

The agency "extension" agreements provide that "[Wiley's] payment will retroactively cover all issues and will cover Wiley's continued use of the photographs . . ."[42] While the agreements are carefully worded, and do not use the words "release" or "settle," as Wiley's motion for summary judgment makes clear, its gamesmanship was clearly an attempt to foil Degginger's pending copyright infringement claims.

However, Wiley's backdoor dealings did not accomplish its goal of erasing Degginger's claims. Numerous courts have held that a retroactive license cannot "validate earlier acts of unlicensed copyright infringement."[43] The Middle District of Tennessee recently reviewed this issue in *Encore Entertainment, LLC v. KIDesigns, Inc.*[44] The facts of *Encore* are remarkably

---

[42] exploitation of the copyrighted work outside the specified limits constitutes infringement.").

[42] Exhibits 1-7 to Price Decl.

[43] *Encore Entertainment, LLC v. KIDdesigns, Inc.*, No. 3:03 1129, 2005 WL 2249897 *10 (M.D.Tenn. Sept. 14, 2005); *Leicester v. Warner Bros.*, No. CV95-4058-HLH, 1998 WL 34016724, at *6 (C.D.Cal. May 29, 1998), *aff'd on other grounds*, 232 F.3d 1212 (2d Cir.2000) ("reject[ing] the idea that the earlier infringement can be retroactively validated by the later grant of the license."); *David v. Showtime/The Movie Channel, Inc.*, 697 F.Supp. 752, 764 (S.D.N.Y.1988) (dismissing affirmative defense based on application for retroactive license, in part, because "recognition of the subsequent filing of an application for a "retroactive" license as a defense for prior infringing conduct would eviscerate the protections inherent in the copyright scheme.").
    Some district courts have permitted a retroactive license from a co-owner to exonerate an infringing defendant. *See, e.g., Lone Wolf McQuade Assocs.*, 961 F.Supp. 587, 587-98 (S.D.N.Y.1997) (holding that television programs did not infringe plaintiff's copyright where defendants received retroactive license from third-party joint copyright owner); *SBK Catalogue P'ship v. Orion Pictures Corp.*, 723 F.Supp. 1053, 1059 (D.N.J. 1989) (referring to the court's prior decision in which it found that a joint copyright owner was "entirely within its rights to grant a retroactive license to the Orion defendants and that an authorization from one joint copyright owner is an effective defense to an infringement action brought by another joint owner."). These cases do not contain the in-depth analysis found in cases rejecting retroactive licenses.

[44] *Id.*

similar to those here. Some of the defendants obtained a limited license from plaintiff's licensing agent to use the plaintiff's copyrighted musical compositions.[45] The defendant argued that even if its use beyond license limits was infringement, "the infringement has since been cured by [its] securing of retroactive licenses specifically covering" the copyrighted compositions.[46] The court, however, found that since the defendants had exceeded the limited licenses, the defendants' putative retroactive license from the plaintiff's licensing agency did not excuse their infringements.[47] The court ruled that "to find otherwise, would promote a scenario whereby individuals would be permitted, if not encouraged, to willingly infringe upon a copyright interest until caught and then, once caught, simply apply for a retroactive license to avoid liability for earlier infringement. Such a scheme would plainly contradict the purposes underlying federal copyright law."[48]

In another similar case, where a defendant obtained a supposed retroactive license one-and-a-half years into copyright litigation, the Central District of California in *Leicester v. Warner Bros*. "reject[ed] the idea that the earlier infringement can be retroactively validated by the later grant of the license." The court found that, "[a]t the time Warner Bros. took the pictures and made pictorial reproductions of ZM, it had no license to do so. It's [sic] actions at that time, if an infringement of Mr. Leicester's copyright, could not be later validated by the grant of the license."[49]

The United States Court of Appeals for the Second Circuit also recently rejected an

---

[45] *Id*. at *2.
[46] *Id*. at *3.
[47] *Id*. at *8.
[48]  *Id*. at *10. After reaching this conclusion, the court noted that the agency had revoked the retroactive license in that case, a fact not present here.
[49] *Leicester v. Warner Bros*., No. CV95–4058–HLH(CTX), 1998 WL 34016724 at *6 (C.D. Cal. May 29, 1998).

attempted retroactive license workaround in a slightly different factual context. In *Davis v. Blige*, the court evaluated whether a copyright co-owner could grant a retroactive license that would excuse the defendant from the plaintiff's accrued copyright infringement claims. The Second Circuit held that it could not, in part because "[a] 'retroactive' assignment or license that extinguishes the accrued infringement claims of a non-consenting co-owner by traveling back in time to 'undo' an unlawful infringement destroys the co-owner's valuable and vested right to enforce her claim."[50] The appeals court made clear it disfavored retroactive licenses to void accrued claims: "There is little from a policy perspective to recommend a rule that allows retroactive licenses or assignments, and there are two strong reasons disfavoring them—(1) the need for predictability and certainty and (2) discouragement of infringement."[51] First, the court found that a retroactive license in this situation would be contrary to congressional intent, since "'[i]t would also damage, if not extinguish, the "'principal purpose' of the Copyright Act, which is 'to encourage the origination of creative works by attaching enforceable property rights to them.' "[52] The court also found retroactive licenses were problematic because they put infringement claims in flux:

> If retroactive transfers and licenses were permissible, one could never reliably and definitively determine if and when an infringement occurred, because an infringement could be "undone" by the very sort of maneuver attempted by defendants in this case. *See Venegas–Hernandez v. Asociación De Compositores y Editores de Música Latinoamericana*, 424 F.3d 50, 60 (1st Cir. 2005) ("Fitting agency concepts like 'retroactive authorization' into copyright law provides plenty of room for debate; obviously a license in 1998 did not 'cause' a 1993 infringement."). [footnote omitted] Similarly, one could never know who the pool of authorized users or licensors of a copyright would be at any given time,

---

[50] *Davis v Blige,* 505 F.3d 90, 103 (2d Cir. 2007).

[51] *Id*. at 104-105.

[52] *Id*. at 105 (*quoting Diamond v. Am–Law Publ'g Corp*., 745 F.2d 142, 147 (2d Cir.1984); *see also Veeck v. S. Bldg. Code Congress Int'l Inc*., 241 F.3d 398, 402 (5th Cir.2001) ("The core purpose of copyright law is 'to secure a fair return for an author's creative labor' and thereby 'to stimulate artistic creativity for the general public good.' ")

because a retroactive transfer could always turn an infringer into a potential user or licensor, who would then have the ability to grant his own retroactive licenses or retransfer his new (retroactive) interest retroactively.

This policy rationale is borne out in this case, in which Wiley has attempted to escape liability – *for claims currently being litigated* – from its infringements of Degginger's works. The Copyright Act's infringement remedy[53] has no teeth if an infringer can attempt to avoid its infringements by obtaining a retroactive "extension" from the lowest bidder.

The Second Circuit also addressed another policy reason not to permit retroactive licenses; they undercut the economic value of the infringement remedy and are contrary to the Copyright Act's intent. Wiley's conduct in this case exemplifies this problem:

> [t]he second policy reason disfavoring retroactive copyright transfers and licenses that extinguish the right of other co-owners is that such retroactive activity lowers the cost of infringement to infringers, thus making infringement more attractive. An infringer could "buy" his way out of an infringement suit, in which an injured owner may seek enhanced statutory damages and costs, *see* 17 U.S.C. § 504, by paying a single co-owner for a license or assigned copyright interest. A retroactive license or assignment that can be obtained from a co-owner not bringing suit, or one willing to settle for a lower price than the co-owner bringing the action, is likely to cost much less than the value of the copyright interest including the cost of litigation. The result is that infringement is encouraged and rewarded. **This economic incentive to infringe runs directly counter to the intent of Congress in passing 17 U.S.C. § 504 – namely to "compensate the copyright owner for losses from the infringement, and . . . to prevent the infringer from unfairly benefitting from a wrongful act."**[54]

Similarly here, Wiley has attempted to "buy" its way out of Degginger's claims by paying his licensing agents a pittance, just $131.25 per image used in each infringed textbook.[55]

Wiley paid far less for its retroactive "extensions" than the actual damages and profits from

---

[53] 17 U.S.C. § 501 *et seq*.

[54] *Davis*, 505 F.3d at 106 (emphasis added) (*quoting Abeshouse v. Ultragraphics, Inc*., 754 F.2d 467, 470 (2d Cir.1985) (*quoting* H.R.Rep. No. 94–1476, at 161); *see also David*, 697 F.Supp. at 764 ("recognition of the subsequent filing of an application for a 'retroactive' license as a defense for prior infringing conduct would eviscerate the protections inherent in the copyright scheme.").

[55] Boyd Decl. ¶ 63.

Wiley's infringement to which Degginger is entitled as damages in this litigation.[56]  Degginger asks the Court to deny Wiley's motion for summary judgment because these supposed retroactive license "extensions" cannot and should not eviscerate Degginger's accrued claims pending in federal court litigation.

> **B.**     **Even if the retroactive "extensions" here could release Degginger's claims, Degginger's contract with Photoshot does not authorize the settlement of accrued claims that relate to photographs licensed by its predecessor Bruce Coleman, Inc.**

All but one of the claims Wiley asks the Court to dismiss are based on limited licenses issued by Bruce Coleman, Inc., which was acquired by Photoshot in 2008.  But Degginger's contract with Photoshot, dated March 6, 2013, does not give Photoshot authority to address Degginger's accrued claims for copyright infringement of images licensed by Bruce Coleman, Inc.[57]  "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent."[58]

Tellingly, Wiley focuses on its purported extension contracts with Photoshot, rather than *Degginger's* agency contract with Photoshot, which is the key document here.[59]  While Degginger's contract grants Photoshot permission to address some infringement claims, *it does not give Photoshot authority to address those at issue here*.  Subparagraph 15.2 states, "[e]ach

---

[56] 17 U.S.C. § 504(b).

[57] Doc. 77-3, Exhibit 4 to Declaration of Christopher P. Beall ("Beall Decl.").

[58] *Sears Mortgage Corp. v. Rose*, 134 N.J. 326, 634 A.2d 74, 79 (1993).

[59] Wiley points to a representation and warranty in its agreements with Photoshot and Photo Researchers that each was "the sole owner or agent of the sole owner of all copyright . . . and other intellectual property and proprietary rights in and to the photograph(s) . . . [and it] was not a party to and the photograph(s) is not subject to any contract or arrangement which would conflict with [the agency's] permission herein." (Doc. 77-1 at 4).  But that term is meaningless here.  Where Degginger did not authorize the agencies to extinguish his accrued claims, and gave no indication to Wiley that they were authorized, their representation and warranty that they could grant retroactive permission does not broaden the scope of their agency.  While Wiley may have a breach of contract claim against the agencies, the agencies' statements cannot alter Degginger's limited grant of rights in his agency agreements.

party shall promptly inform the other of any actual or suspected infringement of copyright, loss of Images, breach of moral rights or other matter giving rise to threat of proceedings or claims or demands in respect of any of the Images."  The following subparagraph, 15.3, follows with, "[i]n the event of any alleged breach of any Licence by a Customer or any other infringement of intellectual property or other rights in an Image, Photoshot may either take action itself against the Customer or alternatively inform you that it shall not be taking action and you may then do so at your option."[60]

In interpreting this contract, "The Court should give effect to the mutual intention of the parties at the time the contract is executed."[61]  The Court should embody the perspective of the parties, looking forward from the date when they entered into the agreement, instead of viewing the agreement from a position of hindsight.[62]  Degginger understood this contract language applied only prospectively, *i.e.*, it would only permit Photoshot to take action regarding infringements of his photographs that occurred after March 6, 2013.[63]  The contract term quoted above does not reference any infringements that had already taken place; the language "in the event of" is forward-looking.  It is undisputed that Wiley's infringements in this case largely took place prior to 2011; while Wiley continues to infringe some of Degginger's photographs even today, Wiley at least began its infringements of the photographs in 42 out of 45 of Degginger's claims in or before 2011.[64]  This term simply does not permit Photoshot to settle infringements that arose prior to the date of the contract.

Additionally,  the agreement did not expressly assign Degginger's already accrued claims

---

[60] Exhibit 4 to Beall Decl.
[61] *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 769 F.Supp. 671, 705 (D.Del.1991), aff'd, 988 F.2d 414 (3d Cir.1993)
[62] *See id.* at 706; 11 WILLISTON ON CONTRACTS § 31:9 at 340-41.
[63] Degginger Decl. ¶ 10.
[64] Boyd Decl.¶ 3.

for copyright infringement. It is well-settled that accrued claims for copyright infringement must be expressly assigned in order for the transfer to be effective.[65] The Photoshot agreement makes no reference to accrued claims, only "any other infringement of intellectual property or other rights in an Image." Since no express assignment of accrued claims occurred here, Photoshot did not have the right to release Degginger's claims.

And, the contract defines the term "Images" as "any digitised [sic] photograph, video clip, illustration or other Image of whatever nature *which you submit to Photoshot* at any time during the term of this agreement, which for the avoidance of doubt shall include all Images *submitted to Photoshot* by you prior to the term of this Photoshot Contributor's Agreement March 2013 agreement."[66] The contract also clearly defines "Photoshot" as "PHOTOSHOT HOLDINGS LIMITED . . . and it[s] administrators, successors in business or any other person to whom it may license or assign its rights under this agreement." Notably, the definition of Photoshot does not include its predecessors, such as Bruce Coleman, Inc. Taking these two definitions together, it is clear that the term "Images" as used in this contract does not extend to photographs that Degginger submitted to Bruce Coleman, Inc.

A third defined term, "Licence," is also important here. It means only "Right Managed Licences and Royalty Free Licences," further defined to include only "any licence *granted by Photoshot* during the period of this agreement *in respect of any Image . . .*" and "any royalty-free

---

[65] *See, e.g., ABKCO*, 944 F.2d at 980 (citations omitted); *Parfums Givenchy Inc. v. C & C. Beauty Sales, Inc.*, 832 F.Supp. 1378, 1384 (C.D.Ca.1993) ("[A]n assignment of a copyright ordinarily is presumed not to convey the right to sue for prior causes of action."); 2 Patry on Copyright § 5:113 (2007) ("The general rule is that a transfer does not convey preexisting causes of action unless expressly conveyed in the transfer document. Thus, absent an express transfer, the transferor retains the right to sue for infringement of any rights it owned at the time the infringement occurred."); *accord. Wellness Pub. v. Barefoot,* Civil Action No. 02-3773 (JAP), 2008 WL 108889 *8 (D.N.J. Jan. 9, 2008).
[66] *Id*. pp. 1-2 (emphasis added).

licence *granted by Photoshot* during the period of this agreement *in respect of any Image . . .*"[67] Thus, the defined term "Licence" does not include any licenses granted by Bruce Coleman, Inc., or photographs submitted to Bruce Coleman, Inc. While Degginger granted Photoshot authority to "take action itself against" infringers "of any License" (issued by Photoshot) for infringement of "rights in an Image" (submitted directly to Photoshot), this grant did not extend to images or licenses involving Bruce Coleman, Inc.

When viewed in light of these definitions, Wiley's argument that Degginger's general grant of authority to make licenses permitted Photoshot to release the accrued claims here cannot succeed. Wiley relies on the following provisions:

> [Degginger] appoint[s] Photoshot as [his] non-exclusive licensee to exploit all Rights *in the Images* in the Territory in all media whether current or yet to be developed. . . .

> Photoshot has full authority to negotiate all terms of commissions, licenses and reproduction rights *in the Images* including the fee, duration and scope of any Licence. . . .

> Photoshot is entitled to set and agree prices *in relation to Images* in its absolute discretion.[68]

Analyzed in conjunction with the narrow definitions of "Images" and "Licence," which Wiley omits from its brief, it is clear that Degginger did not give Photoshot the broad authority that Wiley wishes for. Drawing all inferences in favor of Degginger, as the non-moving party, there is at least a dispute of fact as to whether Photoshot had authority to grant a retroactive license for Wiley's uses beyond previous license limits, and Degginger requests that summary judgment be denied on this ground.[69]

---

[67] *Id*. p. 3 (emphasis added).
[68] Doc. 77-1 at 4 (quoting ¶¶ 2.1, 2.4, 2.5) (emphasis added).
[69] *Reeves*, 530 U.S. at 150.

### C. Degginger's contract with Photo Researchers also does not authorize the settlement of accrued claims.

For the same reasons analyzed above, the Photo Researchers, Inc. contract did not give that agency the authority to release copyright infringement Degginger's claims against Wiley. Wiley relies on the following contract term: "In the event of the unauthorized use of my imagery . . . by your customers or others, I give you full and complete authority to make claims or to institute proceedings in your name, if necessary, without permission from me . . . . Any settlement is at your sole discretion."[70]

First, Degginger again understood this contract language applied only prospectively, to unauthorized uses of his photographs that occurred after January 24, 2013.[71] The same language as is found in the Photoshot contract, "in the event of," is forward-looking here. Photo Researchers, Inc. granted limited permission to Wiley for use of Degginger's photograph in 1993, and Wiley's infringements began soon thereafter.[72] This term does not permit Photo Researchers, Inc. to settle infringements that arose *nearly 20 years prior* to the date of the contract.

Additionally, the agreement did not reference, and therefore did not expressly assign, Degginger's accrued claims for copyright infringement to Photo Researchers, Inc.[73]

And, this agreement is not exclusive. Degginger is not prohibited from pursuing his own claims for unauthorized use by this agreement. Even if Photo Researchers, Inc. had the right to pursue claims against Wiley for infringements (which Degginger does not concede), Degginger also had that right. To permit Photo Researchers, Inc. to release these claims, when Degginger

---

[70] Doc. 77-1 at 5.
[71] Degginger Decl. ¶ 11.
[72] Boyd Decl. ¶ 14.
[73] *See, e.g., ABKCO*, 944 F.2d at 980.

was already pursuing them (and had the right to do so), would undermine this contract term.

Viewing all facts in favor of non-movant Degginger, there is at least a dispute of fact as to whether Photo Researchers, Inc. had authority to grant a retroactive license for Wiley's uses beyond previous license limits, and Degginger requests that summary judgment be denied on this ground.[74]

### D. Wiley cannot rely on any "apparent authority" by Degginger's agencies to release Degginger's copyright infringement claims.

Having failed to show Degginger's agencies had actual authority to release his copyright infringement claims, Wiley also may not obtain summary judgment by raising in its reply brief any "apparent authority" agency argument. " 'Apparent authority arises in those situations where *the principal* causes persons with whom the agent deals to reasonably believe that the agent has authority' despite the absence of an actual agency relationship."[75] The emphasis here is on the actions of the principal (Degginger), not the agency.[76] "If the *principal* is responsible for the third person believing that the person with whom she deals is an agent, or if the principal should realize that his conduct is likely to induce such belief, then there is an agency created by apparent authority . . ."[77] "Pennsylvania courts have described the test for such authority as 'whether a man of ordinary prudence, diligence and discretion would have a right to believe and actually believe that the agent possessed the authority he purported to exercise.' "[78]

---

[74] *Reeves*, 530 U.S. at 150.

[75] *Covington v. International Ass'n of Approved Basketball Officials*, 710 F.3d 114, 120 (3d Cir. 2013) (*quoting AT & T Co. v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 1434 (3d Cir. 1994)) (emphasis added).

[76] *See Edwards v. Born, Inc*., 792 F.2d 387, 390-91 (3d Cir. 1986) ("The crucial question in ascertaining whether apparent authority has been created is whether the *principal* has made representations concerning the agent's authority to the third party.") (emphasis added).

[77] *AT & T Co. v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 1440 (3d Cir.1994) (*quoting Roberts v. Montgomery Ward and Co., Inc*., 729 F.2d 1462 (Table) at *3 (6th Cir. 1984)) (emphasis added).

[78] *Hartford Cas. Ins. Co. v. ACC Meat Co., LLC*, No. 1:10–CV–617, 2012 WL 4506059 *10 (M.D.Pa. (*cont'd*)

Here, Wiley could not have reasonably *or actually* believed that Degginger had granted the agencies authority to release these claims. As outlined above, Degginger has been diligently prosecuting these infringement claims since the day he filed this case, October 21, 2011.[79] Degginger and Wiley participated in a settlement conference on November 28, 2012, during which Degginger made an offer to settle the claims in the case at that time for far more than the pittance it paid Photoshot and Photo Researchers, Inc. for the "license extensions."[80] Wiley knew full well, at least by that date, that Degginger would not authorize the granting of a retroactive license for just $131.25 per image used in each infringed textbook as compensation for Wiley's rampant copyright infringements. Wiley could not have had any reasonable belief in 2013 or January 2014 that Photoshot or Photo Researchers, Inc. had Degginger's authority to settle the *very claims* being litigated in this lawsuit. Degginger, the principal, certainly never gave any indication to Wiley that these agencies possessed the authority to settle his infringement claims.[81] Degginger did not provide his representation agreements with Photoshot and Photo Researchers, Inc. in discovery until February 19, 2014. And Degginger did not even know Wiley was contacting his agencies and attempting to settle the claims until months after the fact, when Wiley disclosed its communications and supposed agreements in discovery.[82]

"Apparent authority is an equitable doctrine that places the loss on one whose manifestations to another have misled the latter."[83] Here, because of Wiley's unclean hands, the equities do not permit Wiley to take advantage of this doctrine. It would not be fair to permit the agencies to release Degginger's claims where Degginger did nothing to mislead Wiley about the

---

April 26, 2012) (*quoting Apex Financial Corp. v. Decker*, 245 Pa.Super. 439, 369 A.2d 483, 486 (1976)).
[79] Doc. 1.
[80] Boyd Decl. ¶ 20.
[81] Degginger Decl. ¶ 13.
[82] *Id*. ¶ 8.
[83] *Edwards,* 792 F.2d at 390-91.

agencies' authority. If anything, *Wiley* misled the agencies by omitting the fact that Degginger had already brought suit for Wiley's infringements.[84] While an agent acting with apparent authority may be able to bind its principal to a settlement agreement with an *innocent* party that does not know the agent is without actual authority, Wiley is far from an innocent here.[85]

> **E.  Wiley is not entitled to summary judgment on Degginger's claims in lines 41-42 since Wiley's documents produced at the close of discovery show it made unauthorized digital uses of Degginger's photographs. Degginger asks to voluntarily dismiss, *without* prejudice, his claims in lines 29 and 43-44. Wiley should not be granted summary judgment on these claims since Wiley has not produced any evidence showing it has not infringed.**

Wiley last asks for summary judgment on five claims – a final dismissal with prejudice – because Degginger did not calculate damages for those claims in his Rule 26(a)(1)(iii) damages disclosure. Degginger provided this disclosure to Wiley on December 27, 2013 (lines 29 and 41-44 in Exhibit A to Degginger's First Amended Complaint). Wiley provided its final usage documents to Degginger on December 23, 2013, just four days prior to the discovery cut-off.[86] Since submitting his damages calculations to Wiley, Degginger has reviewed Wiley's usage documents and discovered that Wiley actually did infringe Degginger's photographs at issue in two of the five claims at issue here, those in lines 41 and 42, by unlicensed digital use.[87] Degginger is supplementing his damages calculations, and will submit a revised disclosure to Wiley shortly, in accordance with Rule 26(e). Because Degginger can prove that Wiley did infringe his photographs in these two claims, Wiley is not entitled to summary judgment.

Degginger requests the Court voluntarily dismiss, without prejudice, the claims in lines 29 and 43-44. Prior to filing its motion for summary judgment, Wiley's counsel asked Plaintiff

---

[84] Boyd Decl. ¶¶ 9, 11.
[85] *See, e.g., Siemens Bldg. Technologies, Inc. v. PNC Bank, N.A.*, No. Civ.A. 02-868 KSH, 2005 WL 1522135 *4 (D.N.J. June 24, 2005) ("apparent authority protects only the innocent third party").
[86] Boyd Decl. ¶ 16.
[87] Boyd Decl. ¶ 17 and Exhibit G thereto (WDegginger 0000350-352).

to "stipulate that it will henceforward seek no relief, monetarily or injunctive, relating to these claims."[88] Plaintiff's counsel offered to dismiss the claims in these lines without prejudice, since "Wiley's records produced in discovery thus far do not indicate that Wiley is infringing these photographs today, [but] Wiley has not made any promise it will not infringe in the future (and indeed, has no systems in place to prevent future infringements)."[89] Wiley then requested that Plaintiff dismiss these claims *with* prejudice, noting that "because the later infringement would have occurred after the dismissal, the nature of that prior dismissal would have no impact on a later claim."[90] Plaintiff's counsel responded that,

> Wiley's most recently produced documents showing its uses of Degginger's photographs were produced on December 23, 2014 and do not indicate on what date they were created, or what is the end date for the data they contain. We cannot be certain that Wiley has not infringed these products as of today."
>
> If Wiley will provide the end dates for the information in these documents (according to [defense counsel] Ashima [Aggarwal]'s recent declaration, the most current documents are WDegginger 0000855, 856, and 857), we will dismiss claims with prejudice up to the end date for the usage information.[91]

Instead of responding to this offer, Wiley insisted on moving for summary judgment on these claims.

Rule 41(a)(2) motions to dismiss without prejudice are generally granted "unless [a] defendant will suffer some prejudice other than the mere prospect of a second lawsuit."[92] The focus is on whether the defendant will suffer *legal* prejudice.[93] Since Wiley has no counterclaims, and its legal defenses will be available to it in any potential future litigation,

---

[88] Exhibit 1 to Beall Decl.
[89] Exhibit 2 to Beall Decl.
[90] Exhibit F to Boyd Decl.
[91] *Id.*
[92] *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990).
[93] *Id*; *see also Gravely v. Wabash Nat. Corp.*, Civil No. 09–5435 (JBS–JS), 2010 WL 3502757 *2 (D.N.J. Aug. 31, 2010).

Wiley will suffer no plain legal prejudice here. Another court in this district recently granted a similar motion to dismiss copyright infringement claims without prejudice where the publisher defendant had not provided full discovery regarding its uses of certain copyrighted photographs.[94] The District of Alaska also permitted voluntary dismissal without prejudice in the same circumstances.[95] Wiley has not provided any assurance to Degginger that it is not presently infringing these photographs. And, as Wiley noted, any claims related to Wiley's *future* infringements would not be affected by this dismissal.

Wiley's request for summary judgment on these claims is based entirely on Degginger's Rule 26(a)(1)(iii) damages computation.[96] Degginger did not include an actual damages calculation for the claims the claims in lines 29 and 43-44 at that time because Wiley's documents produced as of that date did not show any infringements. But, as Plaintiff's counsel pointed out to Wiley's counsel prior to its filing of the instant motion, Wiley's documents do not include an end date through which the information is current; Degginger has no way of knowing whether they even included all of Wiley's uses of Degginger's photographs through December 23, 2013, when they were produced.[97] *Wiley's records show that it infringed the photographs in 42 out of 45 of Degginger's claims, many in more than one way* (for example, by both printing more copies than authorized and distributing copies outside the licensed geographic territory or media).[98] Because Wiley has not provided any evidence that it is not infringing these photographs, it would be unfair to dismiss Degginger's claims with prejudice. Degginger will

---

[94] *See Grant Heilman Photog., Inc. v. Pearson Educ., Inc.,* No. 5:11-CV-4649-LDD, Doc. 100 (E.D. Pa. March 21, 2013) (copy attached as Exhibit I to Boyd Decl.).
[95] *See Alaska Stock, LLC v. Pearson Educ., Inc*., No. 3:11-cv-00162-TMB, Doc. 165 (D. Ak. Aug. 15, 2013) (copy attached as Exhibit J to Boyd Decl.).
[96] Doc. 77-1 at 8-9.
[97] Boyd Decl. ¶ 2.
[98] Boyd Decl. ¶ 13.

only be able to bring these claims in another suit if it learns of Wiley's uses at some point in the future, most likely because of Wiley's own discovery of the usage information in its records at some later date. If that happens, it would be unfair to deny Degginger the ability to re-file these claims simply because Wiley did not disclose the information within the time frame allotted for discovery in this action.

The single case on which Wiley relies in moving for summary judgment on this ground does not support Wiley's request. In *Atlanta Allergy and Asthma Clinic, P.A. v. Allergy & Asthma of Atlanta Allergy et al.*,[99] the facts regarding when the defendants started and stopped infringing were clear.[100] Here, to the contrary, Wiley alone has access to the evidence of its infringements. Wiley may have infringed Degginger's photographs since it created the *undated* usage reports it produced in December 2013. Degginger cannot discern from the documents produced in discovery whether Wiley has infringed these photographs.[101] And Wiley has not met its initial burden on summary judgment by presenting the Court with undisputed evidence that it is *not* actually infringing these photographs today.

Rule 41 does not contain any time limit on dismissals without prejudice.[102] Voluntary dismissal without prejudice even after the close of discovery is not barred.[103] Even where a motion for summary judgment is pending, as here, the Third Circuit has reversed, finding a district court abused its discretion in denying a motion to dismiss without prejudice where "[t]here is no indication that defendants invested significant amounts of time in the specific issue

---

[99] 685 F. Supp. 2d 1360 (N.D.Ga. 2010) (plaintiff failed to present any proof of its own actual damages or that any of defendants' revenues were attributable to their infringements).
[100] *Id.* at 1379.
[101] Boyd Decl. ¶ 2.
[102] *See* Fed. R. Civ. P. 41(a)(2).
[103] *Gravely v. Wabash Nat. Corp.*, Civil No. 09–5435 (JBS–JS), 2010 WL 3502757 *2 (D.N.J. Aug. 31, 2010) (granting motion to dismiss without prejudice over defendant's objection that it relied on the court's discovery schedule).

germane to the" dismissal.[104]   Because there is a dispute of fact as to whether Wiley has infringed these photographs, Degginger requests the Court deny Wiley's motion, and instead permit Degginger to voluntarily dismiss them without prejudice.

## V.    CONCLUSION

Wiley's attempted end-run around this Court in which Degginger's claims have been pending since 2011 should not be sanctioned.  The alleged retroactive license "extensions" that Wiley obtained from Degginger's agents cannot thwart Degginger's accrued, in-suit copyright infringement claims earlier filed against Wiley.  Even if the Court finds that retroactive licenses may extinguish active copyright litigation, Degginger's agents Photoshot and Photo Researchers did not have authority to settle accrued claims for infringements that occurred prior to the dates of Degginger's agency contracts with them.  And Degginger did not take any action that would give Wiley reason to believe they had this authority.

Accordingly, Plaintiff respectfully requests that the Court deny Wiley's motion for partial summary judgment, and grant his request to voluntarily dismiss three claims without prejudice.

Plaintiff requests oral argument on this motion.

---

[104] *See In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990) (in chemical exposure case, plaintiffs, in response to motion for summary judgment on personal injury claims for which they had not yet suffered injuries, moved to involuntarily dismiss those claims without prejudice due to the long latency periods associated with toxic exposure; Third Circuit reversed district court grant of summary judgment and denial of motion to dismiss without prejudice); *see also U.S. ex rel. Haskins v. Omega Institute, Inc.*, 11 F.Supp.2d 555, 570 (D.N.J. 1998) (granting motion to dismiss without prejudice claims the plaintiff decided not to pursue, even though defendants had filed summary judgment motion on those claims).

DATED: March 31, 2014

/s Maurice Harmon
Maurice Harmon, PA Bar No. 304872
Harmon & Seidman LLC
11 Chestnut Street
New Hope, PA 18938
Telephone: (917) 561-4434
maurice@harmonseidman.com

Autumn Witt Boyd, *pro hac vice*
Harmon & Seidman LLC
P.O. Box 4932
Chattanooga, TN 37405
Telephone: 423-756-6013
Facsimile: 423-752-1469
autumn@harmonseidman.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2014, I caused a true and correct copy of the foregoing pleading to be filed via the cm/ecf system, which will serve a notice of electronic filing to all counsel of record.

/s Autumn Witt Boyd
Autumn Witt Boyd