**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

PHIL DEGGINGER,

       Plaintiff,

   v.

JOHN WILEY & SONS, INC.,

       Defendant.

CASE NO.  11-cv-06600

Hon. C. Darnell Jones II

Magistrate Judge Lynne A. Sitarski

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT JOHN WILEY & SONS, INC.'S OPPOSITION TO PLAINTIFF PHIL
DEGGINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Christopher P. Beall
Robert Penchina
Marisa Office
Levine Sullivan Koch & Schulz, LLP
321 West 44th Street, Suite 1000
New York, NY  10036
cbeall@lskslaw.com
rpenchina@lskslaw.com
moffice@lskslaw.com

Michael Berry
Levine Sullivan Koch & Schulz, LLP
1760 Market Street, Suite 1001
Philadelphia, PA 19103
mberry@lskslaw.com

*Attorneys for Defendant John Wiley & Sons, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ i

INTRODUCTION ................................................................................................... 1

SUMMARY OF FACTUAL BACKGROUND .......................................................... 2

ARGUMENT ......................................................................................................... 5

I.     Legal Standard ......................................................................................... 5

II.    Material Issues Of Fact Exist As To Degginger's Seven Claims Of Copyright
       Infringement............................................................................................ 6

       a.     Whether Degginger Has Properly Registered The Photographs Is In Dispute .......... 6

       b.     Whether Wiley Made Unauthorized Use Of Degginger's Copyrighted Work
              Is Not In Dispute ........................................................................... 9

       c.     Material Issues Of Fact Preclude Summary Judgment On Wiley's Statute Of
              Limitations Defense. ....................................................................... 10

              i.     Degginger's Causes Of Action Accrue Upon Publication................................. 10

              ii.    Even If The Limitation Period Is Tolled Under The Discovery Rule,
                     Degginger's Causes Of Action Are Still Untimely............................................. 12

III.   Material Issues Of Fact Prevent Summary Judgment On Wiley's Affirmative
       Defenses................................................................................................ 15

       a.     Degginger Has Not Produced Evidence Of Valid And Enforceable
              Registrations.................................................................................. 15

       b.     Wiley Has Demonstrated Ample Evidence In Support Of Its Eleventh
              Affirmative Defense Of License .............................................................. 15

       c.     Material Issues Of Fact Preclude Summary Judgment On Wiley's Second
              Affirmative Defense Of Laches .............................................................. 16

       d.     Wiley's Defenses And Denials Relating To Damages Are Not Yet Ripe ................ 17

CONCLUSION..................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.R. Mosler & Co. v. Lurie*,
209 F. 364 (2d Cir. 1913) ...................................................................................13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................5, 6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...........................................................................................5

*Cole v. Ferranti*,
No. 4:10-CV-426, 2012 WL 2131188 (M.D. Pa. June 12, 2012)....................11

*Danjaq LLC v. Sony Corp.*,
263 F.3d 942 (9th Cir. 2001) ...........................................................................16

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
36 F.3d 1147 (1st Cir. 1994)..........................................................................6, 7

*Design Basics, LLC v. Roersma & Wurn Builders, Inc.*,
No. 1:10-cv-696, 2012 WL 1830129 (W.D. Mich. Apr. 23, 2012)..........12, 13, 14

*Energy Intelligence Grp., Inc. v. United Steel Workers*,
No. 11-00428, 2013 WL 4648333 (W.D. Pa. Aug. 29, 2013).....................10, 17

*Fakete v. Aetna, Inc.*,
308 F.3d 335 (3d Cir. 2002)...............................................................................5

*Forbes v. Eagleson*,
228 F.3d 471 (3d Cir. 2000)..............................................................................14

*Gallup, Inc. v. Kenexa Corp.*,
149 F. App'x 94 (3d Cir. Sept. 19, 2005) ...........................................................6

*Gloster v. Relios, Inc.*,
No. 02-7140, 2006 WL 1737800 (E.D. Pa. June 26, 2006)........................16, 17

*Gloster v. Relios, Inc.*,
No. 02-7140, 2006 WL 1791306 (E.D. Pa. June 23, 2006)..............................17

*Granger v. Acme Abstract Co.*,
900 F. Supp. 2d 419 (D.N.J. 2012) .....................................................................6

**Page(s)**

*Gross v. FBL Fin. Servs. Inc.*,
   557 U.S. 167 (2009)......................................................................................................6

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*,
   No. 4:08-cv-03181, 2010 WL 4366990 (S.D. Tex. Oct. 27, 2010) ...................................7, 8, 9

*Kay Berry, Inc. v. Taylor Gifts, Inc.*,
   421 F.3d 199 (3d Cir. 2005)..........................................................................................6

*Kepner-Tregoe, Inc. v. Exec. Dev., Inc.*,
   79 F. Supp. 2d 474 (D.N.J. 1999) ........................................................................13, 16, 17

*Kwan v. Schlein*,
   441 F. Supp. 2d 491 (S.D.N.Y. 2006)............................................................................12

*MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*,
   952 F.2d 769 (3d Cir. 1991)..........................................................................................17

*Multitherm Corp. v. Fuhr*,
   No. 89-6151, 1991 WL 146233 (E.D. Pa. July 24, 1991) ...................................................18

*Ortiz v. Guitian Bros. Music Inc.*,
   No. 07 Civ. 3897, 2008 WL 4449314 (S.D.N.Y. Sept. 29, 2008) .........................................11

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   134 S. Ct. 896 (2014).................................................................................................17

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   695 F.3d 946 (9th Cir. 2012) ...................................................................................16, 17

*Poindexter v. Warner/Chappell Music Inc.*,
   No. 06 Civ. 3403 (LTS) (DCF), 2009 WL 302064 (S.D.N.Y. Feb. 9, 2009).........................10

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010)..................................................................................................6, 7

*Rudnicki v. WPNA 1490 AM*,
   580 F. Supp. 2d 690 (N.D. Ill. 2008) .............................................................................7

*Santana Prods., Inc. v. Bobrick Washroom Equip. Inc.*,
   401 F.3d 123 (3d Cir. 2005)....................................................................................16, 17

*Sims v. Viacom, Inc.*,
   No. 2:11-cv-0675, 2012 WL 280609 (W.D. Pa. Jan. 31, 2012) ...........................................11

**Page(s)**

*Tingley Sys., Inc. v. HealthLink, Inc.*,
509 F. Supp. 2d 1209 (M.D. Fla. 2007) ........................................................15, 16

*Waddell v. Small Tube Prods., Inc.*,
799 F.2d 69 (3d Cir. 1986) ........................................................................16

*Wanlass v. Gen. Elec. Co.*,
148 F.3d 1334 (Fed. Cir. 1998) ..................................................................13

*William A. Graham Co. v. Haughey*,
568 F.3d 425 (3d Cir. 2009) ...................................................................10, 12

*William A. Graham Co. v. Haughey*,
646 F.3d 138 (3d Cir. 2011) ...................................................................10, 11

*Williams Elecs., Inc. v. Artic Int'l, Inc.*,
685 F.2d 870 (3d Cir. 1982) ........................................................................18

*Williams v. Curington*,
662 F. Supp. 2d 33 (D.D.C. 2009) ...............................................................11

**Statutes**

17 U.S.C.,
§ 408(b) ..................................................................................................6, 7
§ 411(a) ....................................................................................................6
§ 412(2) ...................................................................................................18
§ 507(b) ...................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 56(a) ........................................................................................5

iv

Defendant John Wiley & Sons, Inc. ("Wiley") respectfully submits this Memorandum of Law in opposition to the Motion for Partial Summary Judgment by Plaintiff Phil Degginger ("Plaintiff's Motion") (Doc. No. 78):

## INTRODUCTION

Plaintiff's Motion leaves two fundamental questions in dispute:

- **Did Phil Degginger register the photographs at issue with the Copyright Office?**

- **Was Degginger on notice of unauthorized use of these photographs, first licensed in 1990, earlier than October 2008?**

These questions cannot be answered in the affirmative at this stage in light of the genuine issues of fact that remain unresolved; therefore, summary judgment must be denied.

As to the first question, the evidence in the record fails to link the photographs at issue with the alleged certificates of registration. The certificates of copyright registrations contain no indication as to the photographs they cover. Degginger contends that he created records of what was deposited, but admitted that he created two of the records only after the Copyright Office approved his applications, a process that can take months if not years. Moreover, Degginger's credibility is suspect in light of demonstrably misleading testimony he previously provided with respect to his copyright registrations as well as his ongoing confusion as to the registration numbers applicable to his claims. These questions of fact as to the contents of Degginger's copyright registrations and the credibility of his testimony can only be resolved at trial.

As to the second question, the evidence in the record casts serious doubt on Degginger's testimony that he was not aware until 2009 of any infringement in connection with licenses dating as far back as 1990. Degginger is a professional photographer who grew up in the family business of stock photography. His father was not only a professional photographer, but owned a stock photo agency representing the works of several other photographers. The issue of

freelance photographers' rights vis-à-vis publishers became a focus of significant industry and national media coverage during the mid 2000s.  Moreover, a close family friend has testified of her involvement with licensing disputes with a textbook publisher in 2006, and this same friend acted as an expert witness in a case involving nearly identical copyright issues in July 2008.  These circumstances create, at a minimum, a genuine dispute as to when Degginger knew or had reason to know of potential infringement, which in turn affects the Court's determination on the timeliness of Degginger's claims and the application of the equitable defense of laches.

With regard to Degginger's request for summary judgment as to certain of Wiley's defenses, Degginger bears the burden of proof as to some of these, and certain other defenses only come into play in the assessment of any damages.  As a result, his asserted basis for summary judgment – Wiley's purported failure to introduce evidence – is of no moment.

Accordingly and for the reasons discussed more fully herein, Degginger's motion for partial summary judgment should be denied.

## SUMMARY OF FACTUAL BACKGROUND

The facts material to the disposition of this motion are set forth herein as well as in Wiley's Response to Plaintiff's Statement of Undisputed Facts and Separate Statement of Additional Disputed Material Facts ("WSUMF").

In the 1990s and, to a lesser extent, the early 2000s, Wiley sought and obtained permission for the use of images created by professional stock photographers Edward R. Degginger ("Ed Degginger") and his son, Phil Degginger.  First Am. Compl. ("FAC", Doc. No. 64), Ex. A (Doc. No. 64-1).  Wiley's photo editors negotiated these rights directly with Ed Degginger in most instances, although they also obtained rights through agencies authorized to represent Degginger.  WSUMF ¶¶ 3 & 22.

2

Over the next twenty years, the publishing industry underwent major changes, expanding from traditional print textbooks to electronic formats such as CD-ROMs, e-books and ultimately web-based products in an increasingly global marketplace. *Id.* ¶ 6. This expansion resulted in significant changes to the photo licensing business, a result of which was litigation concerning the rights of photographers who licensed their work to publishers. *Id.* Industry commentators and organizations, including the American Society of Media Photographers ("ASMP") (of which the Degginers were members), covered these lawsuits and related issues extensively. *Id.* ¶ 7. Closer to home, Ed Degginger regularly consulted with his friend Sonia Wasco, the president of another stock photo agency, who was personally involved in disputes with textbook publishers over photo licenses as early as 2006. *Id.* ¶ 8. Indeed, it was the result of a phone conversation from Ms. Wasco that the Degginers met with their current legal counsel and ultimately decided to file the instant action. *Id.* ¶ 9.

Phil Degginger filed the original complaint (the "Complaint") on October 21, 2011. (Doc. No. 1). Two years later, Degginger filed an amended complaint, appending an exhibit alleging 45 "claims" of copyright infringement,[1] 34 of which are based on images created by his father Ed Degginger and 11 images created by Phil Degginger. FAC, Ex. A. In its prayer for relief, the FAC seeks both statutory damages as well as actual damages, including specifically Wiley's profits from the alleged infringement. FAC at 8.

In the months leading up to this lawsuit, Phil Degginger registered several collections of photographs with the Copyright Office, and he continued to file additional registrations as this case progressed. *See, e.g.*, FAC, Ex. A, Rows 1 & 7. Although he amended the complaint in

---

[1] Exhibit A to the FAC lists by row, among other things, the image, the invoice allegedly governing its use, and the publication in which it allegedly appeared. FAC, Ex. A. Although these rows do not necessarily allege distinct causes of action for infringement, for ease of reference, each row shall be referred to herein as a "claim."

August 2013, Degginger continued to assert new or different registration numbers for certain claims, resulting in, if not reflecting, significant confusion with respect to the actual copyright registrations at issue in this litigation.[2]  WSUMF ¶¶ 13-15.  This confusion flows from the fact that Degginger has not produced, and Wiley is not aware of, any reliable evidence showing which images were submitted in connection with which copyright registration applications.[3]  The certificates of registration do not identify the individual images, but rather provide only generic titles of the photo collections (*e.g.*, "Photographs by Phil Degginger in 1990"), and Degginger has not obtained certified copies of the corresponding deposits he submitted to the Copyright Office.  WSUMF ¶ 17 & 18.

Degginger now seeks summary judgment on the issue of liability with respect to the claims alleged at Rows 8, 9, 19, 20, 33, 35, and 38 of the FAC (the "Seven Claims"), which are based on two images authored by Phil Degginger and two images authored by Ed Degginger (collectively, the "Photographs").  The FAC alleges the following registration information in connection with these claims:

- Row 8:  Registration No. VA-1-690-042

- Row 9:  Registration No. VA-1-780-038

- Row 19:  Pending Registration

- Row 20:  Pending Registration

- Row 33:  Pending Registration

---

[2] Despite these ongoing "changes" to his allegations, Degginger has not sought Wiley's consent or moved to amend the FAC.  WSUMF ¶ 16.  Absent formal amendment to the pleadings, Wiley's response to Plaintiff's Motion is properly restricted to the operative allegations in this litigation (*i.e.*, those found in the FAC).

[3] Also contributing to the confusion is the fact that Phil Degginger prepared these registrations at least five years and in most cases, at least fifteen years after the images were allegedly first published. FAC, Ex. A.

- Row 35:  Pending Registration[4]

- Row 38: Registration No. VA-1-690-318

FAC, Ex. A.  In support of his motion for summary judgment on liability, Degginger submitted a declaration appending "[c]opies of the pertinent Certificates of Registration" associated with the photographs at issue in Plaintiff's Motion.  Degginger Decl. ¶ 7 (Doc. No. 78-10).  This exhibit contains registration certifications bearing the numbers VA 1-690-042; VA 1-690-318; VA 1-780-038; and VA 1-867-794.[5]  *Id.*, Ex. A (Doc. 78-11).

Degginger also seeks summary judgment on nine of Wiley's affirmative defenses, but did not submit any evidence in support of this motion.  Pl.'s Mot. at 15-20.

## ARGUMENT

## I.    Legal Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The non-moving party can defeat summary judgment by identifying specific material factual disputes showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 247.  "A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party."  *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002) (citations and internal quotation marks omitted),

---

[4] By email dated March 13, 2013, Degginger's counsel indicated that the image at Row 35 of the FAC was registered under Registration No. VA 1-867-818.  WSUMF ¶ 15.  Although this image also appears at Rows 19, 20, and 33, Degginger's counsel made no representations as to these claims.  *Id.*

[5] Despite Degginger's eleventh hour "correction" to the registrations, he did not submit the certificate for the purportedly correct registration underlying two of these claims, Registration No. VA-1-867-818.

*abrogated on other grounds by Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167 (2009).  All facts

must be construed in a light most favorable to the non-moving party, and all reasonable

inferences must be drawn in that party's favor.  *Anderson*, 477 U.S. at 255.

## II.   Material Issues Of Fact Exist As To Degginger's Seven Claims Of Copyright Infringement

A plaintiff seeking summary judgment on the issue of copyright liability must establish

the absence of any material factual dispute as to both elements of an infringement claim:

"(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the

plaintiff's work."  *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005) (citation

omitted).  The plaintiff must also establish the absence of any factual dispute as to proper

registration of each copyrighted work, a precondition to an action for infringement pursuant to

Section 411(a) of the Copyright Act.  *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010).

Because significant issues of fact exist as to whether the Photographs have been properly

registered with the Copyright Office, summary judgment on the issue of liability must be denied.

### a.   Whether Degginger Has Properly Registered The Photographs Is In Dispute

Proper registration encompasses compliance with the statutory formalities for registration

as set forth under 17 U.S.C. § 408(b), which, in relevant part requires a deposit of "two complete

copies" of the materials submitted for registration.  *See* U.S. COPYRIGHT OFFICE, CIRCULAR 40A –

DEPOSIT REQUIREMENTS FOR REGISTRATION OF CLAIMS TO COPYRIGHT IN VISUAL ARTS

MATERIAL (Sept. 2012 rev.) (appended as Ex. 1 to the Declaration of Christopher P. Beall

("Beall Decl.") submitted herewith).  The significance of the copyright deposit is clear:

"Without [the deposit] materials, it is . . . impossible to determine whether plaintiff is seeking to

enforce a copyright in the same work that he deposited with the Copyright Office."  *Granger v.

Acme Abstract Co.*, 900 F. Supp. 2d 419, 426 (D.N.J. 2012) (citing *Gallup, Inc. v. Kenexa Corp.*,

149 F. App'x 94, 95 (3d Cir. Sept. 19, 2005)); *see also Data Gen. Corp. v. Grumman Sys.*

*Support Corp.*, 36 F.3d 1147, 1162 (1st Cir. 1994) ("[A] key purpose of the Section 408(b)

deposit requirement is to prevent confusion about which work the author is attempting to

register."), *abrogated on other grounds by Muchnick*, 559 U.S. at 166;[6] *Rudnicki v. WPNA 1490*

*AM*, 580 F. Supp. 2d 690, 692 (N.D. Ill. 2008) (holding that only the six works included in the

deposit were properly registered).[7]  The failure to demonstrate compliance with the deposit

requirement is fatal to an infringement claim.  *Rudnicki*, 580 F. Supp. 2d at 692; *see also*

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-cv-03181, 2010 WL 4366990, at *24

(S.D. Tex. Oct. 27, 2010).

    Here, Degginger has not shown that the Photographs were included in the registration

application deposits submitted to the Copyright Office.  In support of the registration

requirement, Degginger relies on four certificates of registration and his own testimony that the

images at issue were properly registered.  Pl.'s Statement of Undisputed Facts in Support of Its

Mot. for Partial Summ. J. ¶ 4 (Doc. No. 78-1).  The certificates of registration cannot establish

that the *Photographs* were registered – the certificates do not identify any specific image, but

rather state only the generic titles of the photo collections without any reference to the individual

images they contain.  *See* Degginger Decl., Ex. A.  The only evidence that would demonstrate

which images were submitted in connection with each registration application are the certified

---

[6] The First Circuit's analysis of material and immaterial deposit errors does not apply here, where the images are entirely absent from the specified deposits.  *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1162 (1st Cir. 1994).  To hold otherwise would allow a plaintiff to retroactively include **any** work within a given registration, regardless of whether it appeared in the original deposit.

[7] In *Rudnicki*, the district court denied the plaintiff's motion *in limine* to preclude the defendants from arguing non-registration.  *Id.* at 694.  The plaintiff had allegedly registered six broadcasts as a "representative" subset of a larger body of broadcasts.  *Id.*  The court held that the deposit requirements for broadcasts mandate a "complete copy" of each broadcast, therefore, at most, the only broadcasts covered by the registration were the six broadcasts the plaintiff had submitted as the deposit.  *Id.*

deposit copies submitted to the Copyright Office, which Plaintiff's Motion neither cites nor attaches.[8]

The only other evidence of registration Degginger offers is his own testimony that the Photographs have been properly registered. *See* Degginger Decl. ¶ 7. Degginger's previous testimony on the registration of his images, however, is, demonstrably false. During his deposition on July 26, 2012, Degginger testified that all of the images at issue (as then stated in the original Complaint) had been properly registered. WSUMF ¶ 11. In fact, *eight* claims in the original complaint were based on images that had not been registered at the time of Degginger's deposition – the allegations in the FAC make clear that registrations for these images were not submitted until ***June 2013***. FAC, Ex. A, Rows 5, 15, 19, 20, 26, 27, 33 & 35. Four of these claims – Rows 19, 20, 33 and 35 – are at issue in Plaintiff's Motion. At a minimum, Degginger's previous misleading testimony as to the registration of his images calls into doubt his current testimony on the same issue, a question of credibility that must be resolved against the party seeking summary judgment and instead by the fact-finder at trial.

The nonspecific certificates of registration and Degginger's questionable testimony do not satisfy Degginger's burden to demonstrate the absence of any factual dispute as to the registration of the Photographs.[9] *See, e.g.*, *Interplan Architects, Inc.*, 2010 WL 4366990, at

---

[8] Degginger could have obtained properly certified copies of the deposits from the Copyright Office, but apparently chose not to do so. WSUMF ¶ 18. Because fact discovery is now closed, he should not be permitted to produce any additional discovery at this late stage.

[9] The day before the parties' dispositive motions were due, counsel for Degginger informed Wiley's counsel by email of errors with respect to the registration numbers alleged for five claims in the FAC, including two at issue in Plaintiff's Motion (Rows 9 and 35 of the FAC). WSUMF ¶ 15. Despite this representation, Degginger has not sought to amend its complaint, *id.* ¶ 16, and Wiley therefore need not respond to this purported change. Nevertheless, even if the Court were to consider these corrections, summary judgment should not be granted on these claims. Because Degginger did not append the allegedly correct certificate of registration in his Motion (*i.e.*, Reg. No. VA 1-867-818), the only "evidence" in support of proper registration is Degginger's testimony, which, for the reasons discussed *supra*, is not credible enough to support summary judgment. *See* Degginger Decl., Ex. A.

*26.[10]  Wiley anticipates that Degginger will attempt (improperly) to introduce new evidence on reply in order to save his motion.  Degginger presumably will rely on documents that he claims, without substantiation, are *copies* of what was submitted to the Copyright Office – to the extent such documents were produced in discovery, these documents either bear no indication of the registration number to which they correspond or they were unequivocally created months after the deposit materials were submitted.  WSUMF ¶ 20.   Any other evidence Degginger submits will be material not previously produced in discovery that Wiley has had no opportunity to review.

In light of the silent certificates of registration, Degginger's questionable testimony and the ever-shifting universe of registration numbers that Degginger and his counsel have invoked in this case, *see* WSUMF ¶¶ 10-15, the question of proper registration is an issue of fact and credibility to be resolved by the jury at trial.

### b.  Whether Wiley Made Unauthorized Use Of Degginger's Copyrighted Work Is Not In Dispute

Degginger's failure to establish proper registration of the Photographs is a sufficient basis to deny Plaintiff's Motion, and the Court need not address whether Wiley made unauthorized use of the Photographs.  Nevertheless, although Degginger relies on incorrect figures, Wiley does not dispute that its use of the Photographs as articulated in the Seven Claims was not in compliance with the terms of the applicable invoices.

---

[10] In *Interplan Architects, Inc.*, the district court held that the plaintiff's declaration stating that copies of the deposit materials corresponded to the actual deposits submitted to the Copyright Office was not sufficient authentication.  2010 WL 4366990, at *8.  Here, not only does Plaintiff's Motion fail to authenticate the deposit materials, it fails to submit them at all.

### c.  Material Issues Of Fact Preclude Summary Judgment On Wiley's Statute Of Limitations Defense.

Wiley has asserted the statute of limitations as a bar to many, if not all, of Degginger's claims.  Under 17 U.S.C. § 507(b), "[n]o civil action shall be maintained under [the Copyright Act] unless it is commenced within three years after the claim accrued."  *See Energy Intelligence Grp., Inc. v. United Steel Workers*, No. 11-00428, 2013 WL 4648333, at \*19 (W.D. Pa. Aug. 29, 2013).  The plaintiff bears the burden of proving that any theory of equitable tolling applies.  *See, e.g.*, *Poindexter v. Warner/Chappell Music Inc.*, No. 06 Civ. 3403 (LTS) (DCF), 2009 WL 302064, at \*4 (S.D.N.Y. Feb. 9, 2009) (citation omitted), *aff'd Poindexter v. Warner Chappell Music, Inc.*, 372 F. App'x 103 (2d Cir. 2010).  Issues of material fact as to the timeliness of Degginger's copyright claims preclude summary judgment.

### i.  Degginger's Causes Of Action Accrue Upon Publication

When applying the Copyright Act's limitation period to infringement claims based on an allegedly unauthorized publication of a work, the cause of action is deemed to accrue upon that publication.  *See, e.g.*, *William A. Graham Co. v. Haughey* (*Haughey II*), 646 F.3d 138, 146-47 (3d Cir. 2011) ("As a general matter, a cause of action 'accrues' when it has 'come into existence as an enforceable claim or right.'  Black's Law Dictionary (9th ed. 2009).  Stated another way, accrual is '[t]he event whereby a cause of action becomes complete so that the aggrieved party can begin and maintain his cause of action.'  Ballentine's Law Dictionary (3d ed. 1969)"); *see also id.* at 149 ("Accrual happens at the moment when events fulfilling all the elements of a cause of action have transpired."); *id.* at 150 ("Accordingly we do not think the discovery rule should be read to alter the date on which a cause of action accrues.").[11]

---

[11] Degginger's reliance on the *Haughey I* decision, *William A. Graham Co. v. Haughey* (*Haughey I*), 568 F.3d 425, 433 (3d Cir. 2009), for his contention that the "discovery rule" controls the date of accrual under the Copyright Act's statute of limitations fundamentally overlooks the Third

*Continued on following page . . . :*

Thus, where, as here, Degginger's claims arise out of publications produced in excess of authorized amounts or distributed in unauthorized territories and/or formats his cause of action accrued upon the date of those unauthorized publications.[12] *Sims v. Viacom, Inc.*, No. 2:11-cv-0675, 2012 WL 280609, at *5 (W.D. Pa. Jan. 31, 2012) (public airing of allegedly infringing show triggered the running of the limitations period); *see also Williams v. Curington*, 662 F. Supp. 2d 33, 38 (D.D.C. 2009) ("[T]he release date of each allegedly infringing song is an appropriate date on which to begin running the statute of limitations."); *Ortiz v. Guitian Bros. Music Inc.*, No. 07 Civ. 3897, 2008 WL 4449314, at *3 (S.D.N.Y. Sept. 29, 2008) (finding "public distribution of the work at issue . . . creat[ed] sufficient notice to begin the running of the statute of limitations" and holding that limitations period began "when the DVD was officially released and publicly distributed" (citation omitted)).

Degginger filed the original complaint on October 21, 2011. Compl. Hence, the straightforward application of the statute of limitation bars his claims based on publications that contained unauthorized materials that occurred prior to October 21, 2008.[13] Indeed, Degginger

---

*Continued from previous page . . .:*

Circuit's explicit re-characterization of the *Haughey I* holding in the subsequent *Haughey II* decision. *See Haughey II*, 646 F.3d at 146-50. The *Haughey II* decision makes clear that a copyright infringement cause of action accrues upon the date of infringement, irrespective of the plaintiff's knowledge of that infringement, the latter being a consideration that only factors into the issue of equitable tolling after the claim has accrued. *See id.* at 150. Thus, Degginger's claims for copyright infringement "accrued" on the date of infringement, that is, on the date when Wiley's use of the Photographs was unauthorized. *See id.*

[12] This conclusion is further buttressed by those courts in the Third Circuit which have held that, in the context of defamation cases, where the allegedly defamatory statement was published in mass media such as books and newspapers, the discovery rule does not apply, reasoning that the rule is "a narrow exception to an otherwise strict limitation standard, . . . [one] intended for hard-to-discern injuries." *Cole v. Ferranti*, No. 4:10-CV-426, 2012 WL 2131188, at *3 (M.D. Pa. June 12, 2012) (collecting cases), *aff'd* 532 F. App'x 205 (3d Cir. 2013).

[13] It is noteworthy that all of titles at issue in this motion were originally published prior to 2007, and all but five were first published in the 1990s. WSUMF ¶ 23. In addition, Wiley's evidence shows that there has been no printing or sales within the three years preceding this action of nine publications. *Id.*

himself has recently conceded that his claims "accrued when 'events satisfying all of the elements of a cause of action ha[d] taken place,' *i.e.*, when Wiley infringed by making uses of his photographs beyond license limits."  *See* Pl.'s Resp. in Opp'n to Def.'s Mot. for Partial Summ. J. at 7 (Doc. No. 80, filed April 1, 2014).

### ii.  Even If The Limitation Period Is Tolled Under The Discovery Rule, Degginger's Causes Of Action Are Still Untimely

Degginger argues in his Motion that the "discovery rule" operates to save his untimely infringement claims, based on his theory that he did not learn of his cause of action against Wiley prior to 2008.  Pl.'s Mot. at 18.  *See, e.g.*, *Haughey I*, 568 F.3d 425.  However, even if the discovery rule tolled the limitations period, which Degginger has not established and Wiley does not concede, material issues of fact render summary judgment inappropriate here where there are substantial questions as to the existence of "storm warnings" and whether Degginger could have learned of his cause of action through "reasonable diligence."  *Id.* at 438; *see also, e.g.*, *Kwan v. Schlein*, 441 F. Supp. 2d 491, 499 (S.D.N.Y. 2006) ("Even applying the more liberal discovery rule," a plaintiff "knew or should have known . . . when the book was published-or shortly thereafter."); *Design Basics, LLC v. Roersma & Wurn Builders, Inc.*, No. 1:10-cv-696, 2012 WL 1830129, at *2 (W.D. Mich. Apr. 23, 2012) ("[I]f the infringement is open and notorious, the copyright holder should be expected to discover it within a three year period."), *adopted by* 2012 WL 1830103 (W.D. Mich. May 18, 2012).

Degginger has been on constructive notice that his images may have been infringed since at least the mid-2000s, when national media such as *The Wall Street Journal* and respected industry organizations and professionals began reporting changes in the stock photography business models and potential violations by textbook publishers, cautioning photographers to monitor the use of their images.  WSUMF ¶ 7.  Around the same time, the American Society of Media Photographers advocated vociferously for photographers' rights in highly publicized

lawsuits concerning photo license terms and published regular updates on its website.  *Id.* ¶¶ 6 & 7.  Degginger and his father were professional photographers and members of the AMSP, and Ed Degginger was the owner of a stock photography agency that represented other photographers, *id.* ¶ 3 – as such, they should be charged with notice of potential infringement concerns.  *See Kepner-Tregoe, Inc. v. Exec. Dev., Inc.*, 79 F. Supp. 2d 474, 488 (D.N.J. 1999) ("[A] reasonable [copyright holder], motivated by his interest in recovering for and preventing infringement, keeps abreast of the activities of those in his field of endeavor." (alteration in orginal) (citation omitted)), *aff'd*, 276 F.3d 577 (3d Cir. 2001) (Table); *see also id.* (citing *A.R. Mosler & Co. v. Lurie*, 209 F. 364, 371 (2d Cir. 1913) for the proposition that infringement suits are barred where complainants lay "'supine for many years, shutting their eyes to what was going on'"); *Wanless v. Gen. Elec. Co.*, 148 F.3d 1334, 1338 (Fed. Cir. 1998) ("[C]onstructive knowledge of the infringement may be imputed to the patentee even where he has no actual knowledge of the sales, marketing, publication, public use, or other conspicuous activities of potential infringement if these activities are sufficiently prevalent in the inventor's field of endeavor.  The patentee who is negligently or willfully oblivious to these types of activities cannot later claim his lack of knowledge." (citing cases)).

Additionally, many of the claims asserted by Phil Degginger are actually those he purportedly inherited from the estate of his father, Ed Degginger.  WSUMF at 2-3.  Because Ed Degginger died the year before his son filed this action, *id.* at 2, Wiley was unable to examine him on his awareness of the potential infringement.  Nevertheless, Phil Degginger testified that his father was "good friends" with Sonia Wasco, the president of stock photography agency Grant Heilman Photography, Inc. ("GHPI"), and that they "consulted one another down through the years."  *Id.* ¶ 8.  Ms. Wasco has been involved in several lawsuits brought by GHPI against textbook publishers – based on sworn testimony she has submitted in these lawsuits, Ms. Wasco

13

was well aware that textbook publishers had used her images in unauthorized ways as early as 2006, and as early as July 2008, she even served as an expert witness as to the calculation of license fees in the event of unauthorized use.  *Id.*  Drawing all reasonable inferences in favor of Wiley, Ms. Wasco likely shared her observations and concerns about the textbook publishers with her friend and fellow agency owner, Ed Degginger.  As for Phil Degginger, he testified that he was aware of misuse and unauthorized use by the textbook publishers at the time of his meeting with his counsel in 2009, but even prior to that was aware of the publishers' "mistakes." *Id.* ¶ 9.

The Deggingers' failure to file timely is particularly inexcusable where the steps required to investigate potential infringement were minimal.  Through internet searches, ordering the publications online or viewing them in bookstores, Degginger could have easily ascertained whether Wiley's uses of his images complied with the invoices' terms, particularly governing geographic distribution and media format – presumably the same steps that Degginger must have taken in order to have a good faith basis to file this lawsuit.  Indeed, both Deggingers could have pleaded each and every allegation in the FAC years earlier.  *See, e.g.*, *Forbes v. Eagleson*, 228 F.3d 471, 488 (3d Cir. 2000) (affirming claims as untimely where "plaintiffs could have actually pled almost every allegation in their complaint concerning defendants alleged [violations]" years earlier (citation and internal quotation marks omitted)).

The industry-wide awareness of photo license issues coupled with the Degginger's personal relationships with active participants in similar litigation are "storm warnings" that would place a reasonable person on notice of potential infringement; accordingly, the evidence creates a genuine dispute as to whether Degginger's claims have expired under the statute of limitations, and summary judgment should not be granted.

**III.    Material Issues Of Fact Prevent Summary Judgment On Wiley's Affirmative Defenses**

Degginger improperly seeks partial summary judgment on various of Wiley's defenses based on a misapprehension of the correct legal standards and the evidence in the record.[14]   For the reasons set forth herein, his motion should be denied.

**a.    Degginger Has Not Produced Evidence Of Valid And Enforceable Registrations**

Wiley denied that Degginger's copyright registrations were valid and enforceable in its Fourth Affirmative Defense.  Def.'s Answer to FAC (Doc. No. 65).  Wiley's denial, however, does not operate to shift the burden of proof from Degginger on this prima facie element of proper registration, a precondition for every claim of infringement he has alleged.  *See, e.g.*, *Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1220 (M.D. Fla. 2007) ("[B]ecause these defenses address the validity of [plaintiff's] copyright, [plaintiff's] motion for summary judgment improperly shifts the burden to [defendant] to prove that [plaintiff] has not satisfied the evidentiary requisites of its own claims.").  As explained more fully in Section II(a), Degginger has not met his burden to prove valid registration of the Photographs underlying the Seven Claims, and therefore Plaintiff's Motion must be denied.  The validity of the registrations for the remaining 38 claims is not currently before the Court – however, Degginger will need to overcome these same defects (along with others) on those claims at trial.

**b.    Wiley Has Demonstrated Ample Evidence In Support Of Its Eleventh Affirmative Defense Of License**

Wiley has moved for partial summary judgment as to 18 of Degginger's claims based on the express licenses granted by agencies authorized to represent Degginger's images.  (Doc.

---

[14] Wiley withdraws two of its defenses asserted in its Answer to the FAC:  the First Affirmative Defense (estoppel) and Tenth Affirmative Defense (claims sounding in contract).

No. 77).  The unequivocal evidence establishing these licenses is set forth in Wiley's

memorandum of law in support of its motion for partial summary judgment (Doc. No. 77-1).

>   **c.  Material Issues Of Fact Preclude Summary Judgment On Wiley's Second Affirmative Defense Of Laches**

Summary judgment on Wiley's affirmative defense of laches should also be denied.  The

equitable defense of laches bars "relief to those who sleep on their rights."  *Gloster v. Relios, Inc.*,

No. 02-7140, 2006 WL 1737800, at *1 (E.D. Pa. June 26, 2006).  Laches involves "(1)

inexcusable delay in bringing suit, and (2) prejudice to the defendant as a result of the delay."

*Santana Prods., Inc. v. Bobrick Washroom Equip. Inc.*, 401 F.3d 123, 138 (3d Cir. 2005).  Due to

the fact-based inquiry, "[t]he Third Circuit . . . has held that a laches defense is rarely subject to

summary judgment."  *Kepner-Tregoe, Inc.*, 79 F. Supp. 2d at 486 (citing *Waddell v. Small Tube

Prods., Inc.*, 799 F.2d 69, 74 n.2 (3d Cir. 1986)) (internal quotation marks omitted).

Whether Degginger's delay is inexcusable cannot be determined because the duration of

the delay is unclear.  Delay is measured by "when the plaintiff knew (or should have known) of

the allegedly infringing conduct, until the initiation of the lawsuit . . .."  *Petrella v. Metro-

Goldwyn-Mayer, Inc.*, 695 F.3d 946, 952 (9th Cir. 2012) (citation omitted), *cert granted*, 134 S.

Ct. 50 (2013).  For the reasons discussed in the context of the statute of limitations defense, there

is, at least, a disputed issue of fact as to when Degginger should have known of Wiley's

publication of his images.  *See, e.g.*, *Tingley Sys., Inc.*, 509 F. Supp. 2d at 1219 ("Because it is

disputed when [the plaintiff] learned of the alleged breach, it cannot be determined whether [the

plaintiff] delayed unreasonably in asserting its objection . . .."); *see also Energy Intelligence

Group, Inc.*, 2013 WL 4648333, at *18 (same).

Regardless its length, a genuine issue of fact exists as to whether Degginger's delay was

inexcusable given the wide availability of the publications at issue and Degginger's incentive to

delay suit in order to recover greater profits.  *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954

16

(9th Cir. 2001); *see also Kepner-Tregoe, Inc.*, 79 F. Supp. 2d at 488. The evidence also suggests severe evidentiary prejudice caused by Degginger's delay. *See Kepner-Tregoe, Inc.*, 79 F. Supp. 2d at 491. Given the significant passage of time, Wiley no longer has access to key witnesses and materials necessary to mount its defenses. WSUMF at 3 & ¶¶ 22-24.

The issue of Degginger's actual and constructive notice must be resolved by the fact-finder before the Court can determine whether Degginger's delay in prosecuting his claims was inexcusable and whether Wiley suffered prejudice as a result.[15] Accordingly, summary judgment on Wiley's defenses of laches is not appropriate.[16]

### d. Wiley's Defenses And Denials Relating To Damages Are Not Yet Ripe

Degginger improperly seeks summary judgment on the issues of Wiley's innocent intent, and the untimeliness of Degginger's registrations (Wiley's eighth and ninth affirmative defenses, respectively). These "defenses" (the latter of which he will have to prove) are, however, important questions of fact that will bear upon Degginger's recovery, if any, of statutory

---

[15] Summary judgment is inappropriate for the additional reason that the correct burden of proof turns on whether the statute of limitations has expired. *See, e.g., Santana Prods., Inc. v. Bobrick Washroom Equip. Inc.*, 401 F.3d 123, 138 (3d Cir. 2005) ("Once the statute of limitations has expired, the defendant enjoys the benefit of a presumption of inexcusable delay and prejudice," and *the plaintiff* must disprove both elements) (citation and internal quotation marks omitted). As discussed supra, there is a genuine dispute as to Degginger's actual or constructive knowledge of the alleged infringement – until this is resolved by the fact-finder, it cannot be determined which party bears the burden of proof on laches. *See Gloster v. Relios, Inc.*, No. 02-7140, 2006 WL 1791306, at *1 (E.D. Pa. June 23, 2006).

[16] As noted in Judge Fletcher's concurring opinion in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, the contours of laches in the copyright context are disputed among the circuits. 695 F.3d 946, 958 (9th Cir. 2012), *cert. granted*, 134 S. Ct. 50 (2013). Courts in the Third Circuit, however, routinely consider laches as a defense to infringement claims, applying the same standards as those articulated by the Ninth Circuit in *Petrella*. *See, e.g., MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 780 (3d Cir. 1991); *Energy Intelligence Grp., Inc. v. United Steel Workers*, No. 11-00428, 2013 WL 4648333, at *18 (W.D. Pa. Aug. 29, 2013); *Gloster v. Relios, Inc.*, No. 02-7140, 2006 WL 1737800, at *1-2 (E.D. Pa. June 26, 2006); *Kepner-Tregoe, Inc. v. Exec. Dev., Inc.*, 79 F. Supp. 2d 474, 488 (D.N.J. 1999), *aff'd*, 276 F.3d 577 (3d Cir. 2001). In any event, the Supreme Court granted certiorari on the issue of the availability of laches in copyright infringement cases where the alleged conduct fell within the limitations period, and oral argument was held on January 21, 2014. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 896 (2014). The likelihood of an imminent decision by the Supreme Court establishing the proper standard for laches in copyright cases is further reason to deny summary judgment on this defense.

damages, and therefore must be resolved by the jury at trial.  *Williams Elecs., Inc. v. Artic Int'l, Inc.*, 685 F.2d 870, 878 (3d Cir. 1982) ("It is settled that innocent intent is generally not a defense to copyright infringement . . . [but] the issue of the defendant's intent may affect the amount of damages available to the plaintiff." (citations omitted)); *Multitherm Corp. v. Fuhr*, No. 89-6151, 1991 WL 146233, at *14 (E.D. Pa. July 24, 1991) ("statutory damages are not available 'for any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.'" (citing 17 U.S.C. § 412(2))).  Finally, although Degginger bears the burden of proving timely registrations, it is clear on the face of the FAC that he is not entitled to statutory damages on any of his claims: each of the images at issue was registered *years* after its initial publication.  *Id.*, FAC, Ex. A.

## CONCLUSION

**WHEREFORE**, Wiley respectfully requests that the Court deny Degginger's motion for partial summary judgment in its entirety.

Dated: April 4, 2014                    Respectfully submitted,


                                        By: ____*/s/ Christopher P. Beall*_____

                                             Christopher P. Beall
                                             Robert Penchina
                                             Marisa Office
                                             Levine Sullivan Koch & Schulz, LLP
                                             321 West 44th Street, Suite 1000
                                             New York, NY  10036
                                             cbeall@lskslaw.com
                                             rpenchina@lskslaw.com
                                             moffice@lskslaw.com

                                             Michael Berry
                                             Levine Sullivan Koch & Schulz, LLP
                                             1760 Market Street, Suite 1001
                                             Philadelphia, PA 19103
                                             mberry@lskslaw.com


                                        *Attorneys for John Wiley & Sons, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I, Christopher P. Beall, an attorney and counsel of record for Defendant John Wiley & Sons, Inc., certify that I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF electronic filing system, which will send automated notification of this filing to all counsel of record on this date.


Dated:  April 4, 2014          By:        */s/ Christopher P. Beall*
                                    Christopher P. Beall
                                    Levine Sullivan Koch & Schulz, LLP
                                    321 West 44th Street, Suite 1000
                                    New York, NY  10036
                                    cbeall@lskslaw.com